UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| MICHAEL BECVAR and LAURIE BECVAR,<br><br>        Plaintiffs,<br><br>vs.<br><br>IMT INSURANCE COMPANY and WADENA INSURANCE COMPANY,<br><br>        Defendants. | 5:23-CV-05055-CBK<br><br>MEMORANDUM OPINION AND<br><br>ORDER |

## INTRODUCTION

This case concerns allegations of breach of contract and bad faith arising out plaintiff's claim under their homeowners insurance policy for damage caused by a hail storm occurring on August 14, 2017, and defendants' denial of coverage. Defendants have filed a motion for partial summary judgment as to plaintiffs' bad faith and punitive damages claims and a motion to bifurcate plaintiffs' breach of contract claim from their bad faith claim. Plaintiffs have filed a motion to exclude evidence from defendants' engineering expert.

## DECISION

### I. Expert Opinion.

Plaintiffs have moved to strike from consideration the expert report of Jerry Dahl, defendant's engineering expert. Plaintiffs contend that the methods he used (to calculate the force of the hail impacts) are not reliable, that he used the wrong standard for identifying hail damage to manufactured siding, that he relied upon fabricated facts, and that he used the wrong wind speeds in his calculations.

The admissibility of expert testimony has evolved both in the Federal Rules of Evidence and in federal court case law. Prior to the adoption of Federal Rule of Evidence

702, admissibility of expert evidence was governed by the <u>Frye</u> test: "in admitting expert testimony deduced from a well-recognized scientific principle or discovery, the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs." <u>Frye v. United States</u>, 293 F. 1013, 1014 (D.C. Cir. 1923).

In 1975, the Federal Rules of Evidence were adopted, including Rule 702, which provided:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Fed. R. Evid. 702 (1975). The <u>Frye</u> test continued to be applied to determine whether proposed expert testimony was admissible under Rules 402 and 702. In 1993, the United States Supreme Court issued its opinion in <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 which held that Fed. R. Evid. 702 did not establish "general acceptance" as a prerequisite to admissibility. <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. at 588, 113 S. Ct. at 2794. The Supreme Court held that the "'general acceptance' requirement would be at odds with the 'liberal thrust' of the Federal Rules and their 'general approach of relaxing the traditional barriers to "opinion' testimony.'"" <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. at 588, 113 S. Ct. at 2794 (*quoting* <u>Beech Aircraft Corp. v. Rainey</u>, 488 U.S. 153, 169, 109 S.Ct. 439, 450, 102 L.Ed.2d 445 (1988)).

The United States Supreme Court revisited <u>Daubert</u> in <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 141, 119 S. Ct. 1167, 1171, 143 L. Ed. 2d 238 (1999).

> In *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), this Court focused upon the admissibility of scientific expert testimony. It pointed out that such testimony is admissible only if it is both relevant and reliable. And it held that the Federal Rules of Evidence "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Id.,* at 597, 113 S.Ct. 2786. The Court also discussed certain more specific factors, such as testing, peer review, error rates, and "acceptability" in the relevant scientific community, some or all of

which might prove helpful in determining the reliability of a particular scientific "theory or technique." *Id.,* at 593–594, 113 S.Ct. 2786.

Kumho Tire Co. v. Carmichael, 526 U.S. at 141, 119 S. Ct. at 1171. "We conclude that *Daubert's* general holding—setting forth the trial judge's general 'gatekeeping' obligation—applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Id.*

In 2000, Federal Rule of Evidence 702 was amended to reflect what the Advisory Committee on the Federal Rules of Evidence concluded Daubert and Kumho Tire, and their progeny, required.

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed R. Evid. 702 (2000). The Advisory Committee Notes to the 2000 amendment of Rule 702 set forth a non-exhaustive list of factors courts have considered in exercising the gatekeeping responsibility required by Daubert. The Advisory Committee set forth further instruction for courts applying the rule.

> *Daubert* did not work a "seachange over federal evidence law," and "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." As the Court in *Daubert* stated: "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."
>
> * * *
>
> When a trial court, applying this amendment, rules that an expert's testimony is reliable, this does not necessarily mean that contradictory expert testimony is unreliable. The amendment is broad enough to permit testimony that is the product of competing principles or methods in the same field of expertise. . . . [P]roponents "do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of

3

evidence that their opinions are reliable. . . . The evidentiary requirement of reliability is lower than the merits standard of correctness."

Advisory Committee Notes to the 2000 amendments to Fed. R. Evid. 702 (citations omitted).

On the one hand, the Advisory Committee notes that the "trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." The Advisory Committee however went on to require that "the trial court must scrutinize not only the principles and methods used by the expert, but also whether those principles and methods have been properly applied to the facts of the case." In my opinion those rules are contradictory. The Advisory Committee stated, in the comments to the 2011 amendments, that "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system" and, *citing* Daubert, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."

Rule 702 was amended in 2011 as follows:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
(a) the expert's scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based upon sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702 (2011). The Advisory Committee Notes on the 2011 Amendments state that the changes were stylistic only with "no intent to change any result in any ruling on evidence admissibility."

Finally, effective December 1, 2023, Fed. R. Evid. 702 was again amended:

4

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b)    the testimony is based on sufficient facts or data;
> (c)    the testimony is the product of reliable principles and methods; and
> (d)    the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702, Dec. 1, 2023 (emphasis supplied). The Rule was amended in 2023 to add the language that "the proponent demonstrates to the court that it is more likely than not that" in the introductory paragraph. The Advisory Committee Notes to the 2023 amendment provide that:

> [T]he rule has been amended to clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule. This is the preponderance of the evidence standard that applies to most of the admissibility requirements set forth in the evidence rules. But many courts have held that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility. These rulings are an incorrect application of Rules 702 and 104(a).

Fed. R. Evid. 702, Advisory Committee Notes to the 2023 Amendments (internal citations omitted).

> The amendment clarifies that the preponderance standard applies to the three reliability-based requirements added in 2000--requirements that many courts have incorrectly determined to be governed by the more permissive Rule 104(b) standard. But it remains the case that other admissibility requirements in the rule (such as that the expert must be qualified and the expert's testimony must help the trier of fact) are governed by the Rule 104(a) standard as well.
>
> Some challenges to expert testimony will raise matters of weight rather than admissibility even under the Rule 104(a) standard. For example, if the court finds it more likely than not that an expert has a sufficient basis to support an opinion, the fact that the expert has not read every single study

that exists will raise a question of weight and not admissibility. But this does not mean, as certain courts have held, that arguments about the sufficiency of an expert's basis always go to weight and not admissibility. Rather it means that once the court has found it more likely than not that the admissibility requirement has been met, any attack by the opponent will go only to the weight of the evidence.

It will often occur that experts come to different conclusions based on contested sets of facts. Where that is so, the Rule 104(a) standard does not necessarily require exclusion of either side's experts. Rather, by deciding the disputed facts, the jury can decide which side's experts to credit. "[P]roponents 'do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable . . . The evidentiary requirement of reliability is lower than the merits standard of correctness.'"

*Id.* (citations omitted).

Subpart (d) of Rule 702 was also amended in 2023 to change the former language "the expert has reliably applied the principles and methods to the facts of the case" to "the expert's opinion reflects a reliable application . . ." The Advisory Committee Notes to the 2023 amendment provide:

Rule 702(d) has also been amended to emphasize that each expert opinion must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology. Judicial gatekeeping is essential because just as jurors may be unable, due to lack of specialized knowledge, to evaluate meaningfully the reliability of scientific and other methods underlying expert opinion, jurors may also lack the specialized knowledge to determine whether the conclusions of an expert go beyond what the expert's basis and methodology may reliably support.

Fed. R. Evid. 702, Advisory Committee Notes to the 2023 Amendments. Finally, the Advisory Committee explained:

Nothing in the amendment imposes any new, specific procedures. Rather, the amendment is simply intended to clarify that Rule 104(a)'s requirement applies to expert opinions under Rule 702. Similarly, nothing in the amendment requires the court to nitpick an expert's opinion in order to reach a perfect expression of what the basis and methodology can support. The Rule 104(a) standard does not require perfection. On the other hand, it

6

does not permit the expert to make claims that are unsupported by the expert's basis and methodology.

*Id.*

The Rule 104(a) standard referred to in the Advisory Committee Notes is that "The court must decide any preliminary question about whether a witness is qualified . . . In so deciding, the court is not bound by evidence rules, except those on privilege." The Rule 104(b) standard is that "When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist. The court may admit the proposed evidence on the condition that the proof be introduced later."

Daubert and its progeny considered Rule 702 as a rule of admissibility and rejected a conservative approach to the consideration of expert testimony. Although the 2023 amendments purport to not change the standards of admissibility of expert testimony, it is unclear from the extensive language of the Advisory Committee Notes to the 2023 Amendments to Rule 702 whether Daubert's leniency survives.

Since the 2023 amendments, the Eighth Circuit still relies upon the "district court's role as the gatekeeper" and refers to Rule 702 as calling for a "'flexible inquiry,' which 'may lead to differing decisions as to whether to admit experts' testimonies.'" Bliv, Inc. v. Charter Oak Fire Ins. Co., 159 F.4th 539, 543 (8th Cir. 2025) (*quoting* Allstate Indem. Co. v. Dixon, 932 F.3d 696, 701 (8th Cir. 2019). "[A]fter Rule 702's recent [2023] amendment courts continue to have a gatekeeping role to assure that evidence admitted in a case is both relevant and reliable." Sprafka v. Med. Device Bus. Servs., Inc., 139 F.4th 656, 660–61 (8th Cir. 2025). "Trial courts are given broad discretion in fulfilling this gate keeping role." Scobee v. USAA Cas. Ins. Co., 168 F.4th 507, 513 (8th Cir. 2026) (*quoting* Wagner v. Hesston Corp., 450 F.3d 756, 758 (8th Cir. 2006)).

Defendants' proposed expert, Jerry Dahl, is a licensed professional engineer who has a Bachelor of Arts in Mathematics and Physics degree, a Bachelor of Science in Mechanical Engineering with Specialty in Materials Science degree, and a Master of

Science in Mechanical Engineering degree. On November 26, 2021, Dahl provided a report of his investigation of the claim of hail damage to the siding of plaintiffs' home. The detailed report opined that the siding has not been damaged by hail. The report was "based on information available at the time that this report was prepared." On February 15, 2024, Dahl provided a supplement to the original forensic engineering report after review of documents provided by plaintiffs during litigation, including counsel's objections to the original report. Following specific and detailed responses to plaintiffs' objections to the accuracy of the original report, Dahl concluded that the findings and opinions in the original report were unchanged. A second supplemental report was produced on November 25, 2024, to respond to plaintiffs' expert reports criticizing Dahl's reports. After extensive responses to plaintiffs' criticisms, Dahl concluded that the findings and opinions in the original report are unchanged. On December 15, 2025, a third supplemental report was produced in response to plaintiffs' motion to exclude Dahl's expert opinion and the claims made therein as to the deficiencies in Dahl's expert opinion. Again, after reviewing the plaintiffs' claimed facts and deposition testimony, Dahl's findings and opinions in the original report were unchanged – the siding was not damaged during the 2017 hail storm.

The record herein is extensive. The expert reports are extensive. I find that defendants have demonstrated that it is more likely than not that Jerry Dahl's expert knowledge will help the trier of fact understand the evidence and determine whether defendants breached the insurance agreement by denying coverage for the claimed hail damage to the siding of plaintiffs' home. I find that the findings and opinions are based upon sufficient facts as they have evolved during discovery. I find that the findings and opinions are the product of reliable and acceptable methods of determining the expert's conclusions and that such conclusions reflect a reliable application of methods used to the evolving facts claimed to have arisen during litigation.

I find that Jerry Dahl's findings and opinions are reliable and admissible. The motion to exclude the expert findings and opinions of Jerry Dahl should be denied. The

8

jury can decide which side's experts to credit after hearing competing evidence and cross-examination.

## II. Summary Judgment.

Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Knutson v. Schwan's Home Service, Inc., 711 F.3d 911, 913 (8th Cir. 2013). The United States Supreme Court has held that:

> The plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).

> The party seeking summary judgment must first identify grounds demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. at 323, 106 S.Ct. at 2553. Such a showing shifts to the non-movant the burden to go beyond the pleadings and present affirmative evidence showing that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d (1986). The non-movant "must show there is sufficient evidence to support a jury verdict in [its] favor." *Nat'l Bank of Commerce v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999). "Factual disputes that are irrelevant or unnecessary will not be counted," *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505, and a mere scintilla of evidence supporting the nonmovant's position will not fulfill the non-movant's burden, *id.* at 252, 106 S.Ct. 2505.

Uhiren v. Bristol-Myers Squibb Co., Inc., 346 F.3d 824, 827 (8th Cir. 2003). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the

9

dispute must be outcome determinative under prevailing law. "Grey v. City of Oak Grove, Mo., 396 F.3d 1031, 1034 (8th Cir. 2005).

"As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "A material fact dispute is genuine if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." Landon v. Northwest Airlines, Inc., 72 F.3d 620, 634 (8th Cir. 1995). The evidence must be considered in the light most favorable to the nonmoving party and all reasonable inferences must be resolved in that party's favor. Northern Bottling Co., Inc. v. Pepsico, Inc., 5 F.4th 917, 922 (8th Cir. 2021).

In a case where jurisdiction is founded upon diversity of citizenship, as in the present case, the district court applies the substantive law of the forum state. Safeco Ins. Co. of Illinois v. Palazzolo, 15 F.4th 1204, 1206, (8th Cir. 2021), *citing* Rose v. Midland National Life Ins. Co., 954 F.3d 1117, 1119 (8th Cir. 2020). All parties cite South Dakota law in support of or in resistance to the pending motions for summary judgment. No claim is made that a choice of law analysis is necessary.

The undisputed facts show that Wadena Insurance Company ("Wadena') issued a homeowners policy to plaintiffs. IMT Insurance Company ("IMT") handles claims for Wadena as its agent. Following an August 14, 2017, hail storm, Wadena or IMT hired an independent adjusting firm to perform inspection and adjustment of plaintiffs' claim. The adjusting firm determined that plaintiffs sustained hail damage to the home's shingles, fascia, gutters, trim, and screens, damage to a hot tub cover and surround sound system, and damage to the roofing, siding, cupola, and gutters of a metal shed on the property, all in the amount of $64,307.43. Plaintiffs were paid in 2017 for the foregoing damages, less their $2,500 deductible.

10

Plaintiffs contend that, during the 2017 inspection, they raised the issue of the damage sustained to the home's siding but the adjusters refused to look at the siding's damage.

In June 2020, plaintiffs reported to Wadena or IMT that they believed there was damage to the home's siding following the 2017 hail storm. On July 1, 2020, Wadena or IMT hired an independent adjuster to inspect the claimed hail damage to plaintiffs' siding. The adjuster inspected the siding and reported to Wadena or IMT that the existing damage to the siding was likely caused by a manufacturing defect or installation damage.

Plaintiffs contend that the adjuster improperly omitted from his opinion that he found chipping on the siding "that could be from hail." Plaintiffs contend that the adjuster orally advised Paul Sorum of Wadena or IMT that he found chipping on the siding "that could be from hail." Plaintiffs claim that Sorum made a note in the file that there may be some hail damage.

On September 4, 2020, Sorum sent a denial of coverage letter to plaintiffs, stating that there was no indication of hail damage to the siding, suggesting that plaintiffs should check with the manufacturer of the siding for warranty issues.

In September 2021, plaintiff's contractor called Wadena or IMT to report he found hail damage to the siding. Paul Sorum communicated with the contractor his belief that the 2017 storm did not cause hail damage to the home's siding.

Plaintiffs contend that Sorum's communication with the contractor was not true because Sorum received information from the adjuster that the damage to the siding could be from hail.

On September 10, 2021, Sorum again contacted the adjuster regarding his opinion as to the claim for damage to the siding resulting from the 2017 hail storm. The adjuster again opined that there was no damage to the siding from the hail storm but instead opined the damaged siding was caused by a manufacturing defect or installation.

On September 21, 2021, Sorum memorialized his activity in the claims file. Sorum stated that he talked to Mike [Becvar] about the claim and the need to get more

11

information.  Mike said he told the initial inspector that he felt the siding had hail damage.

On September 23, 2021, Sorem advised plaintiffs that they would hire an engineer to assess and review the claim.  Wadena or IMT hired Jerry Dahl of Nederveld Engineer who inspected the plaintiffs' home.  Dahl issued a report on November 26, 2021, opining that the siding has not been damaged by hail.  That report was shared with plaintiffs.

Plaintiffs contend that the Dahl report falsely claimed he did not find hail damage to the siding but instead told Sorum the damage was a manufacturing defect.  Plaintiffs contend that Dahl's report was based upon a false standard – that there was a lack of indentations (dents) to the siding.  Plaintiffs claim Dahl fabricated the facts of his report to support his claim that there was a manufacturing defect.

Plaintiffs' attorney contacted Wadena on August 1, 2023, regarding the claim and filed suit August 7, 2023.  No rebuttal engineer report was provided to defendants.

South Dakota recognizes a claim for first-party insurance bad faith, which "typically occurs when an insurance company consciously engages in wrongdoing during its processing or paying of policy benefits to its insured."  Fiechtner v. Am. W. Ins. Co., 2025 SD 60, ¶ 37, 27 NW3d 746, 758 (*quoting* Hein v. Acuity, 2007 SD 40, ¶ 10, 731 NW2d 231, 235).

In order to be successful on a claim of bad faith, a plaintiff must prove:

(1) an absence of a reasonable basis for denial of policy benefits, and

(2) the insurer's knowledge of the lack of a reasonable basis for denial.

Fiechtner v. Am. W. Ins. Co., 2025 SD 60, ¶ 38, 27 NW3d at 758.  "When evaluating whether an insurer has engaged in bad faith, we must look to the facts and law available to the insurer at the time it made the decision to deny coverage."  *Id.* (cleaned up).

> For proof of bad faith, there must be an absence of a reasonable basis for denial of policy benefits [or failure to comply with a duty under the insurance contract] and the knowledge or reckless disregard [of the lack] of a reasonable basis for denial, implicit in that test is our conclusion that the knowledge of the lack of a reasonable basis may be inferred and imputed to an insurance company where there is a reckless disregard of a lack of reasonable basis for denial or a reckless indifference to facts or to proofs submitted by the insured.

12

> Under these tests of the tort of bad faith, an insurance company, however, may challenge claims which are fairly debatable and will be found liable only where it has intentionally denied (or failed to process or pay) a claim without a reasonable basis.

Dakota, Minnesota & E. R.R. Corp. v. Acuity, 2009 S.D. 69, ¶ 17, 771 N.W.2d 623, 629 (*quoting* Walz v. Fireman's Fund Ins. Co., 1996 SD 135, ¶ 7, 556 N.W.2d 68, 70).

There is no genuine issue of material fact that there was a reasonable basis for the denial of insured plaintiffs' claim for coverage of alleged hail damage to their home's siding. The original independent adjuster did not include damage to the siding in the adjustment of plaintiffs' claim in 2017. In 2020, the independent adjuster concluded that any damage to the siding was not a result of the 2017 hail storm. When plaintiffs continued to pursue a claim for insurance coverage for the siding, defendants hired an expert to advise them. The expert advised defendants that the condition of the siding was not a result of hail damage.

There is evidence that the second adjuster told defendants that there was damage to the siding that "could be from hail" but that the adjuster clarified that his opinion was that the damage was not caused by hail. Even if there was evidence that the defendants knew plaintiffs claimed hail damage to the siding, that one or more adjusters were aware of plaintiffs' claim that the hail storm damaged the home's siding, or even that defendants knew there was a possibility that the siding was damaged by hail, that is not sufficient to support a claim for bad faith where there was a reasonable basis for denial of policy benefits. There is no genuine issue of material fact that defendants had a reasonable basis for denial of policy benefits.

Whether in fact the hail storm caused damage to the siding is an issue for the jury in resolving plaintiffs' breach of contract claim. But plaintiffs must show more than that the damage to the siding is recoverable under the insurance contract. Plaintiffs must demonstrate that there is a genuine issue of material fact whether defendants intentionally denied coverage without a reasonable basis. There is no such genuine issue of material

13

fact. Defendants are entitled to partial summary judgment as to plaintiffs' insurance fraud claim.

## III. **Punitive Damages.**

Under South Dakota law, punitive damages are not an available remedy on a claim for breach of contract. Punitive damages are available "[i]n any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, actual or presumed." SDCL § 21-3-2. Punitive damages are appropriate "when the complaining party can prove an independent tort that is separate and distinct from the breach of contract." Grynberg v. Citation Oil & Gas Corp., 573 NW2d 493, 500 (SD 1997).

As set forth above, I find that no genuine issue of material fact exists, warranting summary judgment in favor of defendants on plaintiffs' bad faith claim. Therefore, summary judgement is appropriate on plaintiff's punitive damages claim.

## IV. **Bifurcation.**

Defendants' motion to bifurcate the trial of the breach of contract claim from the bad faith claim is moot.

### ORDER

Based upon the foregoing,

IT IS ORDERED:

1. Defendants' motion, Doc. 25, for partial summary judgment is granted.

2. Defendants' motion, Doc. 29, to bifurcate is denied as moot.

3. Plaintiffs' motion, Doc. 31 to exclude evidence is denied.

DATED this 21st day of July, 2026.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge

14